**In re J.S.**

[Cite as *In re J.S.*, 157 Ohio App.3d 127, 2004-Ohio-2328.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83085.

Decided May 6, 2004.

128

Anthony A. Gedos, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Joseph C. Young and Regina Harden, Assistant Prosecuting Attorneys, for appellee.

Donald E. Howard, guardian ad litem for J.S.

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} Appellant L.S. appeals from an order of the juvenile court granting permanent custody of her son to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). She assigns the following error for our review:

{¶ 2} "The trial court committed reversible error and abused its discretion by failing to set forth and state its factual basis and findings on the record where the evidence was not of the level that could have been determined to satisfy the clear and convincing standard since the appellant had completed her case plan."

{¶ 3} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.

{¶ 4} On March 14, 2001, appellant's minor child, J.S., was hospitalized in the Cleveland Clinic psychiatric ward after suffering from suicidal ideations. On March 20, 2001, CCDCFS filed a complaint alleging appellant neglected her son J.S., born August 14, 1992.

{¶ 5} CCDCFS also filed a motion for pre-dispositional temporary custody. In support of the motion, CCDCFS stated that it took the hospital staff two days to locate appellant after her son was hospitalized, and that appellant did not come to visit her child in the hospital for a day and a half. Additionally, CCDCFS stated that the physician recommended that J.S. take medication to address his diagnosis of ADHD but that appellant refused to administer the medicine. Finally, CCDCFS stated that appellant is unable or unwilling to provide for the special needs of the child, fails to provide adequate supervision, frequently leaves the child alone, and has two younger children who have been committed to the legal custody of their father.

{¶ 6} Thereafter, the court found that the minor child was dependent and neglected, and awarded temporary custody to CCDCFS. J.S. was subsequently placed in foster care. On June 21, 2002, CCDCFS filed a motion to modify temporary custody of J.S. to permanent custody. The hearing on the motion was held on April 29, 2003.

{¶ 7} At the hearing, Aneese Evans, a social worker with CCDCFS, testified that she developed a case plan for appellant and J.S. to be reunited. The case plan required appellant to attend a 16-week parenting class and receive a psychological evaluation.

{¶ 8} Evans stated that in April 2001, she referred appellant to the Berea Children Home for the 16-week parenting class, but in October 2001, Berea terminated appellant for inconsistent attendance. Evans said that in May 2002, she made another referral for appellant to attend parenting classes. She said that it took appellant nine months to complete the 16-week program. She acknowledged that appellant obtained a certificate of completion; however, the accompanying report revealed that she had not benefitted from the program and recommended that she retake the classes.

{¶ 9} Evans also testified that appellant took two years to do the requested psychological evaluation, after five court-scheduled appointments had been missed. The psychological evaluation recommended counseling, which appellant failed to obtain.

{¶ 10} Evans further testified that in May 2001, she set up a weekly visitation schedule for appellant and J.S., but that appellant's visits were inconsistent. She then changed it to bi-weekly and appellant never visited. She stated that in 2002, appellant visited J.S. on his birthday in August and again in December.

{¶ 11} Evans testified that after J.S. was discharged from the Cleveland Clinic, CCDCFS placed him in a specialized foster home with parents trained to work with children with emotional disorders. She said at the time of this placement that J.S. exhibited very disturbed behavior, such as wanting to slit his wrist with a knife, and putting pins in the beds of the other children that would prick them while they slept. Evans said that CCDCFS later placed J.S. in the Cleveland Christian Home and that his behavior has stabilized.

{¶ 12} Finally, Evans testified that she talked to appellant about J.S.'s behavior and emotional challenges, but that she seemed to be in denial.

{¶ 13} Sara Lorincz, a social worker with Cleveland Christian Home, testified that she observed appellant's visit of J.S. on December 3, 2002. She said that this was the first time appellant had visited since August. She stated that throughout the visit, appellant, while speaking with J.S., talked negatively about

his alleged father and about abortion. She stated that she had to warn appellant several times to change the subject or that the visit would be terminated.

{¶ 14} Lorincz stated that she had serious concerns about appellant's parenting skills, because whenever she spoke with her about the allegations surrounding the initial removal of J.S., she claimed that CCDCFS was lying. According to Lorincz, appellant demonstrated that she was not interested in fulfilling the requirements of the case plan.

{¶ 15} Appellant testified that she was 15 years old and in her grandmother's custody when J.S. was born. She stated that the alleged father, 11 years her senior, was incarcerated for approximately the first six years of J.S.'s life, and has not been a part of the child's life. She has two additional children who are in the legal custody of their father.

{¶ 16} Appellant testified that when she was first referred to the parenting classes, transportation problems prevented her from consistently attending. Appellant cited her recent pregnancy and miscarriage as the reason it took her nine months to complete the 16-week program.

{¶ 17} Although the CCDCFS's records showed that appellant completed the psychological evaluation in 2003, appellant contended that she completed the evaluation in 2001, but neglected to bring proof. Additionally, she stated that no one followed up with her after the evaluation.

{¶ 18} Appellant stated that she tried to make the scheduled weekly visits with J.S., but arrived late on many occasions and was prevented from visiting with him. She stated that she probably visited J.S. ten times since he has been in CCDCFS's custody.

{¶ 19} When asked about J.S.'s mental health, the following exchange took place:

{¶ 20} "What do you think about his mental health issues? Do you think he has mental health issues?

{¶ 21} "No. I know what it is, he needs love.

{¶ 22} "What would it take for you to believe he has mental health issues?

{¶ 23} "I would have to see it. I raised him from a newborn to six. He never had any problems then. They have been around him for two years.

{¶ 24} "What if the doctor told you that examined him, would you believe the doctor?

{¶ 25} "I cannot believe the doctor, since I raised him from a newborn to five. I am not going to agree with him.

{¶ 26} "Do you believe that he could have committed suicide, or was somebody making that up?

{¶ 27} "He said he was mad.

{¶ 28} "And you believe someone made that up?

{¶ 29} "He told his teacher that he wanted to commit suicide for attention."

{¶ 30} Guardian ad litem, Donald Howard, addressed the court and stated that appellant failed to consistently visit her son; she appeared to be in denial as to the importance of the case plan; and she failed to appreciate her son's serious mental health issues. Howard recommended that the court grant permanent custody to CCDCFS.

{¶ 31} The trial court awarded permanent custody of the minor child to CCDCFS. Appellant now appeals.

{¶ 32} In her sole assigned error, appellant argues that the evidence presented did not satisfy the clear-and-convincing standard, and that the trial court abused its discretion by failing to set forth its findings on the record.

{¶ 33} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded the utmost respect.[1] A reviewing court must take into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[2] A court exercising juvenile court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment.[3]

{¶ 34} We acknowledge that the termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child.[4] Before a juvenile court can terminate parental rights and award to a proper agency permanent custody of a child, who is neither abandoned nor orphaned, it must find by clear-and-convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E), and that (2) the

1. *In re Campbell* (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, 2000 WL 1514365, citing *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 124, 661 N.E.2d 1008; see, also, *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

2. *Campbell,* citing *Goll.*

3. *In re Pieper Children* (1993), 85 Ohio App.3d 318, 330, 619 N.E.2d 1059.

4. *In re Wise* (1994), 96 Ohio App.3d 619, 624, 645 N.E.2d 812.

grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).[5]

{¶ 35} When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents.[6] Those factors are:

{¶ 36} "(1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * * [;]

{¶ 37} "* * *

{¶ 38} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." [7]

{¶ 39} When a juvenile court finds by clear-and-convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must, as in the instant case, conclude that the child cannot be placed within a reasonable time or should not be placed with the parent.[8]

{¶ 40} In the instant case, the evidence established that appellant made very little effort to comply with the strictures of the case plan. The evidence also showed that appellant is in denial about her child's emotional and mental condition.

{¶ 41} The trial court heard sufficient testimony to conclude that appellant failed continuously and repeatedly to substantially remedy the conditions causing her child to be placed outside her home. Also, the juvenile court's journal entry states the court's finding regarding its decision to grant permanent custody to CCDCFS. The trial court's journal entry contained the specific requirements of R.C. 2151.414(B)(1)(d). Consequently, the trial court needed to find only that the child had been in CCDCFS custody for more than "twelve or more months of a consecutive twenty-two month period, ending on or after March 18, 1999," which the court found. Thereafter, the only remaining issue is whether it is in the best

---

5. See R.C. 2151.414(B)(2); *In re William S.* (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.

6. *In re William S.*, 75 Ohio St.3d at 101, 661 N.E.2d 738.

7. R.C. 2151.414(E).

8. *In re Thorn* (Feb. 16, 2000), Summit App. No. 19597, 2000 WL 202093.

interest of the child to remove him from his mother.[9] The court specifically found, despite visitations being arranged by CCDCFS for the parents and the child, that neither parent utilized these opportunities. Additionally, the court found that the social worker investigated several relatives who were either unable or inappropriate to care for the child, thus leaving granting permanent custody to CCDCFS as the only viable and logical alternative.

{¶ 42} Accordingly, we conclude that appellant's sole assigned error lacks merit.

{¶ 43} The judgment is affirmed.

Judgment affirmed.

ANNE L. KILBANE and DIANE KARPINSKI, JJ., concur.

---

9. *In re Stillman,* 155 Ohio App.3d 333, 2003-Ohio-6228, 801 N.E.2d 475.